# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
## CEDAR RAPIDS DIVISION

JEROME POWER,

          Petitioner,

vs.

STEPHEN WEIS,

          Respondent.

No.  C24-0020-LTS-KEM

**MEMORANDUM
OPINION AND ORDER**

_____

## I.    INTRODUCTION

This matter is before me on a motion (Doc. 16) by respondent Stephen Weis to dismiss petitioner Jerome Power's petition (Doc. 1) for a writ of habeas corpus under 28 U.S.C. § 2254.  Power has filed a resistance.  Doc. 21.  Oral argument is not necessary. *See* Local Rule 7(c).

## II.    BACKGROUND

### A.    *State Court Conviction and Sentence*

In November 2012, following a jury trial, Power was convicted of one count of first-degree murder.  *State v. Power*, 852 N.W.2d 522, 2014 WL 2600214, at *1 (Iowa Ct. App. June 11, 2014) (unpublished).  The Iowa Court of Appeals summarized the facts and trial proceedings as follows:

> On September 19, 2010, just after the ten o'clock news, sixty-eight-year-old Doris Bevins called her friend, Phillip Bemer. . .. While on the phone Phillip heard someone beating on Doris's door. He advised her against answering it. She told Phillip she "wasn't scared of nobody" and wanted to know "who in the hell was at her door at this time of night." When Doris answered the door, a man asked her if she had a gas or an electric stove. Doris first responded: "[I]t's a gas stove." Then Phillip heard her say: "What do you want?" and "Get the hell out of here." Doris next screamed:

"Help. Oh, Lord help me." After that, Phillip heard a gurgling noise and a loud thud, which gave him "cold chills on the other end of the phone."

Phillip called 911, and the police arrived at Doris's apartment a few minutes later[;]. . . they were forced to break down the apartment door. When they entered, the officers found Doris on the floor with her nightgown pulled over her head and a pair of pajama bottoms tied tightly around her neck. Emergency responders tried to resuscitate her but with no luck. They took Doris to the hospital where she died two days later. The medical examiner determined the cause of death to be ligature strangulation.

Soon after discovering Doris police saw Jerome Power standing in the doorway of Doris's kitchen. Power and his girlfriend, Mary Meier, lived in the apartment upstairs from Doris. Officers placed Power under arrest at gunpoint. When they searched Power, police found a cigarette lighter, a stocking cap, a red LED light, a cell phone, and a charger. Power told officers at least three times he wanted them to give his keys and the cell phone to Meier. The phone was later identified as belonging to Doris.

As police were taking Power to their squad car, he started yelling that he had seen a black male running out of Doris's apartment. During an interview at the station, Power told detectives he saw Terry Wilson, a white man, exit the apartment. Power also told them he called 911 from Doris's apartment and gave her CPR but later admitted those statements were not true. Power later sent a letter to investigators, dated July 13, 2011, casting aspersions on a black male whom Power allegedly saw on the night in question. In his trial testimony, Power told the jury he went to Doris's apartment because she asked him to inflate an air mattress for her. He said he locked Doris's front door "just out of force of habit." He testified he walked to the back of the apartment to look for the air pump and did not see Doris on the floor until after he heard the police pounding on the door. He said he was going to the door when the police knocked it down.

*Id.; see also Power v. State*, 997 N.W.2d 439, 2023 WL 5949183, at *1 (Iowa Ct. App. Sept. 13, 2023) (unpublished). The Iowa District Court sentenced Power to life in prison. Doc. 1 at 1; Doc. 21 at 2.

### B.    Direct Appeal

Power appealed his conviction and sentence to the Iowa Court of Appeals. He argued that (1) there was insufficient evidence to support his conviction, (2) his trial counsel provided ineffective assistance and (3) the district court abused its discretion by giving a supplemental jury instruction and denying his request for new counsel. *Power*, 2014 WL 2600214, at *1. The Iowa Court of Appeals affirmed his conviction finding that the evidence was sufficient to convict Power of first-degree murder and that the district court did not abuse its discretion in either giving the jury an *Allen* charge or in denying Power's request for substitute counsel. *Id*. at *3, 5, 6. The court did not rule on Power's ineffective assistance of counsel claim to preserve the issue for possible post-conviction relief (PCR) proceedings. *Id*. at *4. The Iowa Supreme Court denied Power's petition for further review on August 8, 2014. *State v. Power*, Docket No. 13-0052 (Linn County, Iowa), Case ID FECR090358;[1] *see also* Doc. 16-1 at 8 *and* Doc. 4 at 5.

### C.    PCR Proceedings

On July 16, 2015, Power filed a PCR application in the Iowa District Court, which was denied. *Power v. Iowa*, 06571 PCCV083482 (Linn County, Iowa). He filed a timely appeal and argued that his trial counsel was ineffective for failing to "investigate and present a defense based on the medical condition of his right hand," and that his "PCR counsel was ineffective in failing to advance his claim against trial counsel." *See Power v. State*, 2023 WL 5949183, at *1. The Iowa Court of Appeals affirmed the denial, concluding that his ineffective assistance of counsel claims against his trial and PCR counsel failed as he did not demonstrate that either attorney breached an essential duty or prejudiced him. *Id*. at *4. The Iowa Supreme Court denied further review on November

---

[1] Iowa state court records may be accessed online at:
https://www.iowacourts.state.ia.us/ESAWebApp/SelectFrame.

6, 2023, and procedendo issued on November 13, 2023. *Power v. State*, Docket No. 22-0961, Case ID PCCV083482 (Linn County, Iowa); Doc. 1 at 6.

### D. *Federal Habeas Petition*

Power mailed his habeas petition (Doc. 1) to this court on February 9, 2024, and it was filed on February 16, 2024. He makes one claim of ineffective assistance of counsel, contending that his trial counsel was ineffective for failing to investigate, prepare and present medical evidence showing his documented disability in his dominant hand. Doc. 1 at 5. In an initial review order (Doc. 4), I found that Power's petition was timely filed and properly exhausted. *Id*. at 6-7. Additionally, I granted his motion to appoint counsel. *Id*. at 7-8. The respondent then filed the present motion to dismiss, arguing that Power failed to identify (1) clearly established United States Supreme Court precedent that the state court's decision directly contradicts or (2) an unreasonable application of clearly established federal law and, as such, his claim should be dismissed. Doc. 16-1 at 14-15, 21.

## III. APPLICABLE STANDARDS

### A. *Motion to Dismiss*

The Federal Rules of Civil Procedure authorize a pre-answer motion to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The Supreme Court has provided the following guidance in considering whether a pleading properly states a claim:

> Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." As the Court held in [*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)], the pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. *Id.*, at 555, 127 S. Ct. 1955 (citing *Papasan v. Allain*, 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L. Ed. 2d 209 (1986)). A pleading

that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." 550 U.S. at 555, 127 S. Ct. 1955. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.*, at 557, 127 S. Ct. 1955.

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id.*, at 570, 127 S. Ct. 1955. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.*, at 556, 127 S. Ct. 1955. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Ibid.* Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* at 557, 127 S. Ct. 1955 (brackets omitted).

*Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009).

Courts assess "plausibility" by "'draw[ing] on [their own] judicial experience and common sense.'" *Whitney v. Guys, Inc.*, 700 F.3d 1118, 1128 (8th Cir. 2012) (quoting *Iqbal*, 556 U.S. at 679). Also, courts "'review the plausibility of the plaintiff's claim as a whole, not the plausibility of each individual allegation.'" *Id.* (quoting *Zoltek Corp. v. Structural Polymer Grp.*, 592 F.3d 893, 896 n.4 (8th Cir. 2010)). While *factual* "plausibility" is typically the focus of a Rule 12(b)(6) motion to dismiss, federal courts may dismiss a claim that lacks a cognizable legal theory. *See, e.g.*, *Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013); *Commonwealth Prop. Advocates, L.L.C. v. Mortg. Elec. Registration Sys., Inc.*, 680 F.3d 1194, 1202 (10th Cir. 2011); *Target Training Intern., Ltd. v. Lee*, 1 F. Supp. 3d 927, 937 (N.D. Iowa 2014).

In considering a Rule 12(b)(6) motion, ordinarily the court "cannot consider matters outside the pleadings without converting the motion into a motion for summary judgment." *McMahon v. Transamerica Life Ins. Co.*, No. C17-149-LTS, 2018 WL 3381406, at *2 n.2 (N.D. Iowa July 11, 2018); *see* Fed. R. Civ. P. 12(b)(6). On the other hand, when a copy of a "written instrument" is attached to a pleading, it is

5

considered "a part of the pleading for all purposes." Fed. R. Civ. P. 10(c). Thus, when the pleadings necessarily embrace certain documents, I may consider those documents without turning a motion to dismiss into a motion for summary judgment. *McMahon*, 2018 WL 3381406 at *2 n.2. These documents include "exhibits attached to the complaint." *Mattes v. ABC Plastics, Inc.*, 323 F.3d 695, 697 n.4 (8th Cir. 2003).

## B.  *Habeas Corpus*

"The writ of habeas corpus stands as a safeguard against imprisonment of those held in violation of the law." *Harrington v. Richter*, 562 U.S. 86, 91 (2011). However, 28 U.S.C. § 2254 "sets several limits on the power of a federal court to grant an application for a writ of habeas corpus on behalf of a state prisoner." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). Section 2254(a) provides that a federal court shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

A federal court's review of a state court decision under § 2254 is deferential. *Lomholt v. Iowa*, 327 F.3d 748, 751 (8th Cir. 2003). A state court decision on the merits should not be overturned unless it:

> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

## IV.    ANALYSIS

Power contends that his trial counsel's failure to investigate and put forth evidence regarding his hand disability "represented complete abdication of counsel's duty to provide competent representation." Doc. 21 at 14. Additionally, Power asserts that he was prejudiced by this decision, as although he testified about his hand injury, the lack of corroboration through medical records or an expert witness diminished the credibility of his testimony. *Id.* at 16. The respondent argues that the Iowa Court of Appeals acted reasonably in denying Power's ineffective assistance of counsel claim. Doc. 16-1 at 15. The respondent contends that Power did not establish that his lawyer's performance was deficient, and in any case, Power suffered no prejudice. *Id.* at 15-20.

Power's ineffective assistance of counsel claim was adjudicated and rejected on the merits in state court. *See supra* Section II.C. Therefore, I cannot grant Power's petition unless the state court's decision was based on an unreasonable determination of the facts based on the evidence presented in the state court proceeding or was contrary to or an unreasonable application of federal law. 28 U.S.C. § 2254(d); *see Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).

### A.    Ineffective Assistance of Counsel Standards

The Iowa Court of Appeals correctly noted that the merits of Power's ineffective assistance of counsel claim are governed by the two-prong legal analysis set forth in *Strickland v. Washington*, 466 U.S. 668, 688-89 (1984). *Power v. State*, 2023 WL 5949183, at *2. To state a claim for ineffective assistance of counsel, Power must show that his attorney's representation "was 'deficient' and that the 'deficient performance prejudiced the defense.'" *Walking Eagle v. United States*, 742 F.3d 1079, 1082 (8th Cir. 2014) (quoting *Strickland*, 466 U.S. at 687). "Deficient" performance is performance that falls "below an objective standard of reasonableness," *Lafler v. Cooper*, 566 U.S. 156, 163 (2012) (citation omitted), that is conduct that fails to conform to the degree of skill, care and diligence of a "reasonably competent attorney." *Strickland*, 466 U.S. at

7

687. Matters of trial strategy are generally entrusted to the professional discretion of counsel and they are "virtually unchallengeable." *Loefer v. United States*, 604 F.3d 1028, 1030 (8th Cir. 2010). Counsel is not constitutionally ineffective because of the failure to raise a "relatively sophisticated" and "counter-intuitive argument." *Donnell v. United States*, 765 F.3d 817, 821 (8th Cir. 2014) (quotations omitted). However, "[s]trategy resulting from lack of diligence in preparation and investigation is not protected by the presumption in favor of counsel." *Holder v. United States*, 721 F.3d 979, 994 (8th Cir. 2013) (citation omitted).

To establish prejudice, a movant must "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Lafler*, 566 U.S. at 163 (citation omitted). "Reasonable probability" means "a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. "The likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 112 (2011). Ultimately, a showing of "prejudice" requires counsel's errors to be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 104 (citation omitted).

In rare circumstances, counsel may be so plainly deficient that prejudice may be presumed. *United States v. Cronic*, 466 U.S. 648, 659–60 (1984). This would include "the complete denial of counsel," such as when "counsel entirely fails to subject the prosecution's case to meaningful adversarial testing . . .." *Id.* at 659. To rise to this level, defense counsel must fail "to oppose the prosecution throughout the . . . proceeding as a whole," not just at "specific points." *Bell v. Cone*, 535 U.S. 685, 697 (2002).

Because a movant must show both deficient performance and prejudicial effect under *Strickland*, a court reviewing ineffective assistance claims need only address one prong if either fails. *See Williams v. United States*, 452 F.3d 1009, 1014 (8th Cir. 2006). Additionally, each individual claim of ineffective assistance "must rise or fall on its own merits," meaning that courts should not take into account the "cumulative effect of trial counsel's errors in determining *Strickland* prejudice." *Middleton v. Roper*, 455 F.3d

8

838, 851 (8th Cir. 2006); *United States v. Brown*, 528 F.3d 1030, 1034 (8th Cir. 2008) ("[W]e have repeatedly rejected the cumulative error theory of post-conviction relief.").

## B.    Application

Power contends that the Iowa Court of Appeals unreasonably denied relief on his ineffective assistance of counsel claim. Doc. 21 at 13. He argues that his counsel "was deficient for failing to investigate and present evidence of [his] injuries, which would have shown the jury it was not physically possible for him to have committed this crime." *Id.* Power asserts that the court assumed that his attorney's investigation was adequate without performing further inquiry, which he maintains is an unreasonable application of *Strickland*. *Id.* at 14. Additionally, he contends that his attorney's decisions were not "supported by reasonable professional judgment" and he was prejudiced by his attorney's failure to offer any substantiating evidence of his hand injury as it impacted the credibility of his testimony. *Id.* at 14-16.

The respondent argues that the Iowa Court of Appeals did not unreasonably apply *Strickland*. Doc. 16-1 at 15. The court concluded that Power's attorney made a strategic decision not to introduce further testimony or medical records regarding Power's hand disability. *Id.* at 17. Power's attorney investigated the possibility of using his hand disability as a defense and "concluded the issue was bad for Power" because of the minimal pressure needed to restrict airflow and suffocate someone. *Id.* at 18. Counsel further noted that no expert would have testified that it was impossible for Power to have strangled the victim, as he still had one working hand. *Id.* at 18-19. Additionally, the respondent contends that Power cannot establish prejudice, as the Iowa Court of Appeals held that "Power's claimed inability to tie a knot does not overcome the overwhelming evidence of his guilt." *Id.* at 20 (quoting *Power v. State*, 2023 WL 5949183, at *4).

As noted above, both *Strickland* and § 2254(d) require "highly deferential" standards of review and "when the two apply in tandem, review is 'doubly' so." *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (citations omitted); *see also Forrest v.*

9

*Steele*, 764 F.3d 848, 853 (8th Cir. 2014); Doc. 16-1 at 17.  Indeed, federal habeas courts cannot equate "unreasonableness under *Strickland* with unreasonableness under § 2254(d)." *Harrington*, 562 U.S. at 105.  The appropriate "question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*

The Iowa Court of Appeals found that Power's trial counsel made a strategic decision not to introduce medical testimony regarding his hand injury.  *Power*, 2023 WL 5949183, at *4.  "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Knowles v. Mirzayance*, 556 U.S. 111, 124 (2009) (citation omitted).  Power contends, however, that the court merely assumed that his trial counsel's investigation was adequate without performing any further inquiry.  Doc. 21 at 14.  That is incorrect.  The court incorporated Power's trial counsel's thorough explanation for declining to introduce evidence regarding Power's hand disability:

> So Jerome had brought this to our attention early on and indicated, you know, it was physically impossible for him to strangle this victim. We did do a deposition of the state medical examiner, Dr. Thompson. And I believe during that deposition I posed the question to him, you know, how much pressure or strength . . . to basically cut someone's air off in a manner such as Doris was believed to have been killed. . . . And the medical examiner, I believe his testimony was it was like ten pounds or less, so not very much.
>
> And, again, it wasn't ever a serious—to me it was never a serious point of contention or really something that we would want to pursue because of just the—again, it wouldn't take very much pressure, and you could do it with your off hand. And Jerome had told the police at some point that he had tried to provide CPR to Ms. Bevins as part of his testimony I think either when he was arrested or at trial, trying to help her.
>
> So this whole idea that he wasn't physically capable of doing this was—I mean, did not comport with the facts that—or just what it would take to actually get that done. And despite his—you know, it was something he repeated. I don't want to minimize that at all. But it was just never a—it was never a strategy that I thought was wise or something that would ever gain any—there's more pitfalls to that idea than there was any benefit that

we might get, again, because it doesn't take hardly any pressure at all to strangle someone, apparently. . .

*Power*, 2023 WL 5949183, at *3.

Power is entitled to relief under § 2254 only if the Iowa Court of Appeals either unreasonably applied clearly established Federal law or unreasonably determined the facts based on the evidence presented at the state court level. *See* 28 U.S.C. § 2254(d). Power has demonstrated neither. The Iowa Court of Appeals accurately explained the Supreme Court's framework, as established in *Strickland*, for ineffective assistance of counsel claims. Moreover, the court did not merely assume that Power's trial counsel's investigation was adequate. Rather, its reproduction of Power's trial counsel's statement shows that the opposite is true. The court considered Power's counsel's reasoning and determined that his decision not to present medical testimony regarding Power's hand disability was a reasonable one. *Id.* at *4. The state court record demonstrates that Power's trial counsel thoroughly considered the facts and law and decided not to present medical testimony because (1) Power's left hand functioned normally and (2) only minimal force is needed for strangulation. Therefore, the Iowa Court of Appeals' conclusion that Power's trial counsel acted reasonably was not contrary to or an unreasonable application of *Strickland* step one, nor was it an unreasonable determination of the facts considering the evidence. *See* 28 U.S.C. § 2254(d).

Additionally, the Iowa Court of Appeals held that Power's trial counsel's decision not to present medical testimony did not prejudice him. Indeed, the court remarked that "[t]he State's evidence did not leave much room for the jury to wonder 'whodunit.'" *Power*, 2023 WL 5949183, at *4. The court also found that "Power's claimed inability to tie a knot does not overcome the overwhelming evidence of his guilt." *Id.* In making this determination, the court summarized the evidence against Power:

Power was in Doris's apartment when police arrived, the door was locked, and he did not respond to the police at the door nor was he observed lending any aid to Doris. Power also had Doris's cell phone in his pocket and asked police to give the phone to his girlfriend, Doris's friend overheard much of

11

the attack on the phone, Power lied to police about calling 911, and Power's claim that a person by the name of Terry Wilson was to blame proved false.

*Id.*

Because of the overwhelming evidence against Power, his claim that his trial counsel's failure to present medical testimony regarding his right hand caused significant prejudice is without merit. *See* Doc. 21 at 16. Power has not made a colorable argument that but for the failure of counsel to offer such testimony, the result of the proceeding would have been different. The Iowa Court of Appeals' holding as to the lack of prejudice was not an unreasonable application of *Strickland*, nor was it an unreasonable determination of the facts considering the evidence in the state court record.

Because of the wide deference afforded to trial counsel's strategic decisions, in addition to the substantial deference given to state court decisions in adjudicating § 2254 motions, I find that the Iowa Court of Appeals did not unreasonably determine the facts in light of the evidence, nor did the court unreasonably apply *Strickland* in determining that Power's trial counsel's strategic choices were reasonable and did not prejudice him. For these reasons, Power has failed to state a plausible claim upon which relief can be granted and his ineffective assistance of counsel claim must be dismissed. *See* Fed. R. Civ. P. 12(b)(6).

## V.    *CERTIFICATE OF APPEALABILITY*

A certificate of appealability may be granted only when the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see also Miller-El v. Cockrell*, 537 U.S. 322, 336–37 (2003); *Garrett v. United States*, 211 F.3d 1075, 1076–77 (8th Cir. 2000); *Mills v. Norris*, 187 F.3d 881, 881 n.1 (8th Cir. 1999); *Carter v. Hopkins*, 151 F.3d 872, 873–74 (8th Cir. 1998); *Ramsey v. Bowersox*, 149 F.3d 749, 759 (8th Cir. 1998); *Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997). "A substantial showing is a showing that issues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further

12

proceedings." *Cox*, 133 F.3d at 569. Thus, "[w]here a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Miller-El*, 537 U.S. at 338 (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). Similarly, when a federal habeas petition is dismissed on procedural grounds without reaching the underlying constitutional claim, "the [movant must show], at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *See Slack*, 529 U.S. at 484.

Having thoroughly reviewed the record, I find Power failed to make the requisite "substantial showing" with respect to his § 2254 petition. *See* 28 U.S.C. § 2253(c)(2); Fed. R. App. P. 22(b). Therefore, a certificate of appealability will not issue. If Power desires further review of his § 2254 petition, he may request issuance of the certificate of appealability by a judge of the Eighth Circuit Court of Appeals in accordance with *Tiedeman v. Benson*, 122 F.3d 518, 521 (8th Cir. 1997).

## VI. CONCLUSION

For the reasons set forth herein, the respondent's motion (Doc. 16) to dismiss is **granted**. The petition (Doc. 1) is **denied** and this action is **dismissed with prejudice**. A certificate of appealability shall **not issue**.

**IT IS SO ORDERED** this 2nd day of April, 2025.

_____
Leonard T. Strand
United States District Judge

13